**TAGGED OPINION**



**ORDERED in the Southern District of Florida on July 10, 2008.**

**Laurel M. Isicoff, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
*Miami Division*
www.flsb.uscourts.gov

In re:

| | |
|---|---|
| **FOUNTAIN IMAGING OF NORTH** | **Case No.  06-12686-BKC-LMI** |
| **MIAMI BEACH, LLC;** | **Case No.: 06-12688-BKC-LMI** |
| **FOUNTAIN IMAGING OF** | **Case No.: 06-12689-BKC-LMI** |
| **PEMBROKE PINES, LLC;** | **Case No.: 06-12690-BKC-LMI** |
| **FOUNTAIN IMAGING OF** | |
| **PLANTATION, LLC; and** | **Chapter 7** |
| **FOUNTAIN IMAGING OF** | |
| **WEST PALM BEACH, LLC,** | **(Jointly Administered Under Case No.** |
| | **06-12686-BKC-LMI)** |
|      Debtors. | |

_____/

**OMNIBUS ORDER (A) GRANTING GENERAL ELECTRIC CAPITAL**
**CORPORATION'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO**
**PARAGRAPH TWENTY-EIGHT OF THE PINES SALE ORDER [CP #415]**
**AUTHORIZING RETENTION OF $100,000 PAID BY OSCAR MAITA AND/OR STRAX**
**INSTITUTE, INC. TO GENERAL ELECTRIC CAPITAL CORPORATION [CP #419];**

{FT478275;1}

Case No. 06-12686-BKC-LMI

**AND (B) DENYING STRAX INSTITUTE LLC'S MOTION TO COMPEL GECC TO RETURN DEPOSIT TO STRAX INSTITUTE, LLC AND FOR AWARD OF INTEREST AND FOR DAMAGES FOR THE INTERFERENCE BY GECC IN THE USE AND <u>OCCUPANCY OF THE PREMISES (PINES) [CP #447]</u>**

This matter came before the Court for preliminary hearing on December 19, 2007, and for evidentiary hearing on March 19, 2008, on General Electric Capital Corporation's ("GECC") Motion for Entry of an Order Pursuant to Paragraph Twenty-Eight of the Pines Sale Order (CP #415) Determining that the Court Lacks Jurisdiction Over $100,000 Nonrefundable Forbearance Payment and the Dispute Between It and Oscar Maita, or in the Alternative, Authorizing Retention of $100,000 Paid by Oscar Maita and/or Strax Institute, Inc. to General Electric Capital Corporation (the "Motion to Retain $100,000 Payment"). [GECC Ex. #26; CP #419]. On January 7, 2008, the Court also conducted a preliminary hearing on Strax Institute LLC's ("Strax") Motion to Compel GECC to Return Deposit to Strax Institute, LLC, and for Award of Interest and for Damages for the Interference by GECC in the Use and Occupancy of the Premises (Pines) (the "Cross Motion"). [GECC Ex. #27; CP #447]. For the reasons set forth in this Order, GECC's Motion to Retain $100,000 Payment is GRANTED and Strax's Cross Motion is DENIED**.**

**SUMMARY OF DISPUTE**

The instant dispute centers around the parties' intent regarding a $100,000 payment (the "$100,000 Payment") made to GECC on September 25, 2007. The $100,000 Payment was made by Strax, apparently on behalf of its Chief Executive Officer, Oscar Maita ("Maita"), who was a prospective purchaser of the assets of Fountain Imaging of Pembroke Pines, LLC (the "Pines Debtor") and an obligor under certain Court approved carveout agreements. GECC held a

Case No.  06-12686-BKC-LMI

security interest in virtually all of the assets of the Pines Debtor, and was also an obligee under the Court approved carveout agreements.

Strax made the $100,000 Payment prior to, but around, the time Strax entered into an Asset Purchase Agreement (the "Pines APA") with the Pines Debtor. In fact, the Pines APA treats the $100,000 Payment as a deposit under the Pines APA even though Strax made the $100,000 Payment to GECC.

GECC asserts that, although the Pines APA treated the $100,000 Payment as a good-faith deposit, GECC was paid the $100,000 Payment as adequate protection for the Debtors' or Maita's use of its collateral, and in consideration of GECC's decision to forebear from removing its collateral from the Pines Debtor's business premises. Conversely, Maita and Strax contend that the $100,000 Payment was merely a good-faith deposit, and since Strax was not the successful purchaser of the Pines Debtor's assets the terms of the Pines APA provide that the $100,000 Payment is refundable. Consequently, Strax argues, GECC should be compelled to return the $100,000 to Strax.

## FACTS AND BACKGROUND

On June 20, 2006 (the "Petition Date"), Fountain Imaging of North Miami Beach, LLC ("NMB"); the Pines Debtor; Fountain Imaging of Plantation, LLC ("Plantation"); and  Fountain Imaging of West Palm Beach, LLC ("WPB") (collectively, "Fountain" or the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §101 *et seq.* (the "Bankruptcy Cases" or the "Cases"). The Debtors were in the business of operating several MRI imaging centers. The Debtors financed the purchase of their MRI and

Case No.  06-12686-BKC-LMI

CAT scan equipment with GECC. GECC filed a proof of claim in these Cases that asserts a secured claim of $3,270,372.19.

The Debtors operated in chapter 11 for nearly two years. During that time period, the Debtors entered into a number of asset purchase agreements to facilitate a sale of the assets of the Debtors' various locations. The proposed purchaser under most of these asset purchase agreements was Strax or Maita.

Also, during this same time period, the Debtors entered into several carveout and closing extension agreements. The carveout and closing agreements memorialized the understandings amongst the Debtors, the Official Committee of Unsecured Creditors (the "Creditors' Committee"), GECC, and Maita to divide the funds realized from the proposed asset sales and to extend the proposed closing dates on the various sales approved by the Court. The carveout and closing agreements also specified the adequate protection GECC was to receive for the use of its collateral while the Debtors remained in bankruptcy and while potential buyers sought to consummate a purchase of the Debtors' assets. The adequate protection in each case consisted of monthly payments that were to be made by the Debtors or Maita to GECC.

Many of the Debtors' attempts to sell their assets were unsuccessful. Ultimately, however, on or about May 31, 2007, the Debtors closed on a sale to Treasure Construction Corp. ("TCC") of the assets of three of the four Debtor locations: NMB, Plantation, and WPB.[1] Thereafter, the Pines Debtor's location was the only remaining location with unsold assets. In order to extend the May 31, 2007, closing deadline on the sale of the assets of the Pines Debtor (the "Pines'

---

[1] The contract for the sale of these assets was originally between the Debtors and Maita, or Maita's assigns.  Maita assigned his interest in the contract to TCC. [Bilateral Stipulation, GECC Ex. #28, at ¶ 26; CP #582].

- 4 -

Case No.  06-12686-BKC-LMI

Assets"), the Debtors, GECC, the Creditors' Committee, and Maita entered into the Second Amended Carveout and Closing Agreement (the "Second Amended Carveout Agreement"). [GECC Ex. #17; CP #314]. The Court approved the Second Amended Carveout Agreement on June 1, 2007. [GECC Ex. #18; CP #317].

The Second Amended Carveout Agreement extended the deadline for Maita to close on the Pines' Assets through and including June 28, 2007. [Second Amended Carveout Agreement, GECC Ex. #17, at ¶ 15; CP #314]. The Second Amended Carveout Agreement also obligated Maita and the Debtors to pay GECC monthly adequate protection payments in the amount of $33,000 and extension fee payments of $35,000, commencing July 1, 2007, and continuing until Maita or his assigns closed on the purchase of the Pines' Assets. [Second Amended Carveout Agreement, GECC Ex. #17, at ¶ 16; CP #314]. Shawn M. Grimm ("Grimm"), GECC's workout manager responsible for this transaction, testified that GECC did not receive any adequate protection payments or extension fees from any of the Debtors or Maita after June 2007. Grimm's testimony on this issue was not disputed.

A closing on the Pines' Assets did not occur by June 28, 2007. Moreover, since neither the Debtors nor Maita paid GECC the July 2007 adequate protection payment of $33,000 or the July Extension Fee of $35,000 as expressly required under the Second Amended Carveout Agreement,  at a status conference held on August 6, 2007, consistent with this Court's Order Modifying Carveout Agreements, Deferring Ruling on General Electric Capital Corporation's Emergency Motion for Immediate Entry of an Order Converting Debtors' Cases, etc. dated April 16, 2007 (CP # 295), the Court granted GECC complete relief from the automatic stay so that it could recover its collateral from the Pines Debtor. [GECC Ex. #19; CP #366].

Case No.  06-12686-BKC-LMI

Grimm testified that he then initiated the internal process at GECC to schedule a de-installation of the Pines' Assets encumbered by the GECC lien – primarily equipment. Philip J. Landau, Esq. ("Landau"), counsel for GECC, testified that in September 2007, he received calls from Maita seeking to prevent the de-installation and making a new proposal regarding the purchase of the Pines' Assets, including those assets subject to GECC's first lien or security interest. Maita claims that GECC approached him about purchasing the assets. In any event, GECC and Maita began discussions to purchase the Pines' Assets.

Grimm testified it was GECC's position that it would not even entertain the notion of entering into another agreement with Maita until and unless GECC was paid the adequate protection for the months of July, August, and September due to GECC under the Second Amended Carveout Agreement, which payments totaled $99,000, and extension fee payments for those same months totaling $105,000.

Ultimately, GECC and Maita entered into the Term Sheet Regarding Sale of Assets of Fountain Imaging of Pembroke Pines, LLC to Oscar Maita and Adequate Protection to General Electric Capital Corporation (the "Term Sheet"). [GECC Ex. #20]. Pursuant to the Term Sheet Maita agreed to pay $950,000 for GECC's Pines collateral. [Term Sheet, GECC Ex. #20, at ¶ I(a)]. Paragraph 1 of the Term Sheet provides Maita would pay GECC a "nonrefundable payment to GECC" in the amount of $100,000 on or before September 25, 2007. [Term Sheet, GECC Ex. #20, at ¶ 1]. Likewise, paragraph 2 of the Term Sheet purports to obligate Maita to tender a second "non-refundable" payment to GECC on or before October 2, 2007. [Term Sheet, GECC Ex. #20, at ¶ 2]. Paragraph 4 of the Term Sheet provides that Maita would complete a loan application so that GECC could decide whether it would finance the proposed transaction.

Case No.  06-12686-BKC-LMI

Maita argued that the $100,000 Payment from Strax was not the $100,000 he had agreed to pay pursuant to the Term Sheet but the Court finds this argument is unsupported by the record. Strax delivered the payment pursuant to the terms of the Term Sheet – on the date specified and to GECC. In fact, the $100,000 Payment was made before the Pines APA was even drafted.

Peter E. Shapiro, Esq. ("Shapiro"), counsel for the Debtors, testified that on September 26, 2007, Landau sent him the Term Sheet which Shapiro incorporated into the Pines APA between the Debtor and Strax. On October 10, 2007, Shapiro filed the Motion for Order Authorizing the Sale of Substantially All of Its Assets of Fountain Imaging of Pembroke Pines, LLC Pursuant to 11 U.S.C. §363 Free and Clear of All Liens, Claims and Encumbrances (CP #387) (the "Sale Motion") as well as Debtor's Motion for Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially all of the assets of Fountain Imaging of Pembroke Pines, LLC; (II) Approving Form and Manner of Notice; and (III) Setting Objection Deadline (CP #386). [GECC Ex. #21, 22]. Attached as Exhibit A to the Sale Motion was the Pines APA. Shapiro testified: "[i]n drafting the APA and Sale Motion, it was always my intention to incorporate the terms of the Term Sheet into the APA and Sale Motion." [GECC Ex. #2, at ¶ 11]. At the time the Sale Motion was filed, neither Strax nor Maita had made the second $100,000 payment, although the payment was due on October 2, according to the Term Sheet and the Pines APA.

On October 29, 2007, the Debtor filed its Emergency Amended Motion for Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Assets of Fountain Imaging of Pembroke Pines, LLC; (II) Approving Form and Manner of Notice; and (III) Setting Objection Deadline (the "Amended Bid Procedures Motion"). [GECC Ex. #23; CP #401].

- 7 -

Case No. 06-12686-BKC-LMI

The Court set a hearing on the Amended Bid Procedures Motion on October 31, 2007; the Notice of Hearing was served on October 30, 2007. Neither the Amended Bid Procedures Motion nor the Notice of Hearing was served on Maita or Strax, neither of whom, at the time, and indeed, through most of the case, had an attorney.

At the hearing on the Amended Bid Procedures Motion the Debtor advised the Court that neither Maita nor Strax had made the second $100,000 payment and, in the meantime, TCC had expressed an interest in making an all cash offer, albeit in an amount lower than the purchase price in the Pines APA, $700,000. The Court was also advised that Maita had been told about the hearing and that Maita was not planning to attend.

Notwithstanding that the Amended Motion sought approval of bidding procedures based on an all cash deal, on October 31, 2007, the parties submitted, and the Court entered, an Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Assets of Fountain Imaging of Pembroke Pines, LLC; (II) Approving Form and Manner of Notice; and (III) Setting Objection Deadline (the "Bid Procedures Order"). [GECC Ex. #24; CP #405]. That order referred to the original Pines APA and referred to Strax as the Purchaser rather than to the all cash deal proposed by TCC. The parties do not dispute that the Amended Bid Procedures Motion and the Bid Procedures Order approved the form of the Pines APA. *See* Amended Bilateral Prehearing Stipulation. [GECC Ex. #28, at ¶ 37; CP #582].

On November 5, 2007, the Court conducted an auction of the Pines' Assets. Prior to the auction the Debtor advised the Court that the Debtor had received one qualifying, competing bid, from TCC, for $750,000 all cash, which bid the Debtor had determined, after consulting with GECC and the Committee, was the highest and best offer for the Pines' Assets. Maita was also

present at the auction; however, he was not accompanied by an attorney. Nonetheless, for purposes of participating in the auction, the Court recognized Maita as a representative of Strax. Because Strax had put up the $100,000 Payment, pursuant to the Pines APA, Maita was invited to participate in the auction on behalf of Strax, which Maita declined to do once it was explained that the auction was being conducted on an "all cash" basis. At no time did either GECC or the Debtor state that Strax had already forfeited its deposit and, therefore, would be unable to participate in the auction. Not surprisingly, at the conclusion of the auction TCC, as the sole bidder, was the successful bidder.

On November 13, 2007, the Court entered its Order Pursuant to Sections 105(A) and 363 of the Bankruptcy Code (i) Authorizing Sale of Substantially all of the Assets of Fountain Imaging of Pembroke Pines, LLC Free and Clear of Liens, Claims, Rights, Interests, and Encumbrances and (ii) Granting Related Relief (the "Pines Sale Order"). [GECC Ex. #25; CP #415]. Paragraph 28 of the Pines Sale Order provided that GECC must return the $100,000 Payment to Maita within fifteen (15) days of entry of the Pines Sale Order unless GECC filed a motion and memorandum of law setting forth the basis on which it should be excused from returning the $100,000 Payment. [Pines Sale Order, GECC Ex. #25, at ¶ 28].

On November 28, 2007, GECC filed its Motion to Retain $100,000 Payment. [2] [GECC Ex. #26; CP #419]. In its Motion to Retain $100,000 Payment, GECC argued that the $100,000 Payment was, in reality, a forbearance payment that GECC agreed to treat as a good-faith deposit if Maita purchased the Pines' Assets, and was provided to GECC as adequate protection for the Debtors' or Maita's use of its collateral and in consideration for GECC's decision to forebear from

---

[2] Strax argued the motion was untimely filed but I ruled against Strax on this issue.

Case No. 06-12686-BKC-LMI

removing the collateral from the Debtor's business premises. In its motion GECC also argued that the Court did not have jurisdiction over this dispute as it involves two non-debtor parties. At a hearing conducted on December 19, 2007, over GECC's objection, the Court determined that it did have jurisdiction over the instant dispute, and held that a further evidentiary hearing was necessary to determine the parties' intent with respect to the $100,000 Payment.

On December 20, 2007, Strax filed its Motion to Compel GECC to Return Deposit to Strax Institute, LLC and for Award of Interest and for Damages for the Interference by GECC in the Use and Occupancy of the Premises (Pines) (defined *supra* as the "Cross-Motion"). [GECC Ex. #27; CP #447]. At the preliminary hearing on the Cross-Motion, Strax withdrew without prejudice its requests for any damages and attorneys' fees, and agreed to go forward only on its request for return of the $100,000 Payment. [GECC Ex. #28, at ¶ 43; CP #582].

On March 19, 2008, the Court conducted the evidentiary hearing on this matter.

### JURISDICTION

In its Motion to Retain $100,000 Payment, GECC asserted that the Court does not have jurisdiction over the present dispute, as the dispute is between two non-debtor parties over property that is not property of this bankruptcy estate. As previously noted, at the preliminary hearing on this motion the Court overruled GECC's jurisdictional objection, finding that a bankruptcy court always retains jurisdiction to consider the enforceability of its own orders. Because the issues presented relate to the terms of prior orders of this Court including the Bid Procedures Order and the Pines Sale Order, the Court finds that it has jurisdiction to determine whether the $100,000 Payment should be returned to Strax. *See South Motor Co. of Dade County*

Case No.  06-12686-BKC-LMI

*v. Carter-Pritchett-Hodges, Inc.* (*In re MMH Automotive Group, LLC*), 385 B.R. 347 (Bankr. S.D. Fla. 2008).

## DISCUSSION AND ANALYSIS

A.    **The Court Can Consider Parole Evidence to Interpret the APA.**

Strax objected to the introduction of witness testimony to facilitate the Court's interpretation of the terms of the Pines APA and the parties' intent in drafting the Pines APA. It is well-settled law that where there is an ambiguous or incomplete agreement, the court may use parole evidence to give meaning to the contract. *Jones Boat Yard, Inc. v. M/V Capella C*, Case No. 06-21203-CIV; 2006 WL 3664405 (S.D. Fla. Nov. 16, 2006) *citing U.S. v. Metzger Towing, Inc.*, 910 F.2d 775, 779 (11th Cir. 1990) (stating that parole evidence is admissible to explain ambiguity in a contract). Upon a finding of ambiguity, parole evidence is admissible under Florida law to explain or clarify the ambiguous language and to determine the parties' intent, but may not be used to vary terms of the contract. *CSX Transp., Inc. v. Prof'l Transp., Inc.*, 467 F.Supp. 2d 1333, 1338 (M.D. Fla. 2006). "[W]hen a contract is ambiguous and the parties suggest different interpretations, the issue of the proper interpretation is an issue of fact requiring a review of evidence extrinsic to the contract bearing upon the intent of the parties." *In re Ranch House Motor Inn Int'l, Inc.*, 335 B.R. 894, 898 (Bankr. M.D. Fla. 2006).

The Court finds that the Pines APA is ambiguous and consideration of parole evidence is therefore appropriate. Section 4.2(a) of the APA provided that Strax had paid a $100,000 non-refundable deposit to GECC. Section 4.2(b) of the APA provided that Strax was to pay an additional $100,000 non-refundable deposit to GECC. Moreover, Section 10.1 of the APA at least

Case No.  06-12686-BKC-LMI

suggests that if the Purchaser is in material breach, the Debtor can retain the deposit.[3] Conversely, the Pines APA also provides in Sections 10.1(d) and 10.2(c) that if the Purchaser is not in default and is not the successful bidder at the auction, the Deposit will be returned to the Purchaser. No one disputes that the Purchaser under the Pines APA was Strax or that the $100,000 Payment was the Deposit as defined in the Pines APA. Consequently, because one part of the Pines APA provides the Deposit is non-refundable, and another part of the Pines APA provides the Deposit is refundable under certain circumstances, it is clear that the Pines APA is ambiguous and accordingly, parole evidence was admissible to clarify the discrepancies in the APA and also to determine the parties' intent regarding the refundable or non-refundable nature of the $100,000 Payment.

**B.    The $100,000 Payment was More than Just a Deposit and it was the Intent of the Parties that the Payment would be Non-Refundable.**

There are two agreements involved in this dispute. Neither document was well drafted, thus leading to the current predicament. The first agreement is between Maita and GECC regarding the purchase of the Pines' Assets and the possible financing of that purchase by GECC. The Term Sheet is actually titled "Term Sheet Regarding Sale of Assets of Fountain Imaging of Pembroke Pines, LLC to Oscar Maita and Adequate Protection to General Electric Capital Corporation." [GECC Ex. #20]. Neither the Debtor nor the Committee signed the Term Sheet. However, the Term Sheet provided: "b. Terms subject to the approval of Debtor, Fountain Imaging of Pembroke Pines, LLC, the Official Committee of Unsecured Creditors, and the U.S.

---

[3] Shapiro conceded at trial that the Debtor never declared Strax in default under the Pines APA. Thus, GECC's reliance on this section as a basis to retain the $100,000 Payment is not well founded. A default under the Term Sheet was not a default under the Pines APA. Consequently, GECC's declaration of a default under the Term Sheet did not trigger the default provisions of Section 10.1 of the Pines APA.

Case No.  06-12686-BKC-LMI

Bankruptcy Court for the Southern District of Florida." In addition to requiring two $100,000 non-refundable payments to GECC, the purpose and application of which non-refundable payments were not described, the Term Sheet also required monthly payments from Maita to GECC if the sale of the Pines' Assets did not close by December 1, 2007. It is not disputed that the Term Sheet was not approved by the Bankruptcy Court.

Subsequent to the execution of the Term Sheet, the Term Sheet was sent to Debtor's counsel. Consistent with Shapiro's testimony, it is clear that the parties incorporated the provisions of the Term Sheet regarding the sale of the Pines' Assets into the Pines APA, the second agreement involved in this dispute. For example, the payment provisions of the Term Sheet are included in the Pines APA, including the use of the word "non-refundable" when referring to each of the $100,000 payments. Of course, Strax, not Maita, made the $100,000 Payment to GECC, but the Pines APA was drafted so that Strax, not Maita, was the Purchaser. Moreover, GECC was not a party to the Pines APA, and nothing in the Pines APA provides that GECC would retain the non-refundable deposit. The Court, of course, approved the Pines APA.

Although the Court never approved the Term Sheet, the facts and circumstances surrounding its execution are relevant facts to consider in determining the intent of the parties with respect to the $100,000 Payment. Both Grimm and Landau testified that GECC would have never agreed to the proposed sale to Maita or Strax unless the $100,000 Payment and the second $100,000 payment were non-refundable. The Court finds this testimony to be credible. Grimm and Landau testified that GECC received adequate protection payments of $33,000 per month until June 2007. In September 2007, when Maita and GECC negotiated a new proposal regarding purchase of the Pines' Assets, Maita owed GECC $99,000 in past due adequate protection

Case No.  06-12686-BKC-LMI

payments. It is not illogical that GECC would insist the $100,000 be non-refundable since Strax already owed GECC at least $99,000.

Landau also testified that Maita did at one point offer to make the second required payment under the Term Sheet and the Pines APA if GECC would agree that this payment was refundable. It is fair to assume that Maita would not have asked for this concession if he did not understand that the first $100,000 Payment was non-refundable.[4]

## CONCLUSION

The burden of proof in this dispute lay within GECC by virtue of the Pines Sale Order; GECC was required to prove by a preponderance of the evidence that it was entitled to retain the $100,000 Payment. Having reviewed the APA, the Term Sheet, the Sale Order, the prior motions, and the testimony, the Court finds as follows:[5]

1.    The $100,000 payment by Strax to GECC on September 25, 2007 is the $100,000 Payment referenced in the Term Sheet.

2.    The $100,000 Payment was intended to be, and was treated by all parties as, the initial deposit under the Pines APA.

3.    Notwithstanding that the Debtor never declared a default under the Pines APA, and despite Section 10.1(d) of the Pines APA, the Deposit was not refundable.

Accordingly, it is ORDERED and ADJUDGED as follows:

1.    GECC's Motion to Retain $100,000 Payment is GRANTED.

---

[4] Maita testified he did not make the second payment because he was told the deal was an outright sale, not an auction, and when the deal changed he waited to make the second payment.  The reasons for the delay in making the second payment are not relevant to this decision.
[5] Because of these findings, the Court does not need to reach the issue of setoff that was raised.

Case No.  06-12686-BKC-LMI

    2.      Strax's Cross Motion is DENIED.

# # #

Copies furnished to:
Philip J. Landau, Esq.
Scott Allan Orth, Esq.

*Attorney Landau shall serve a conformed copy of this order upon all parties in interest and shall file a certificate of service of same with the Clerk of the Court.*